IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVON TATE, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-21-3075 |
| WARDEN CHRISTOPHER S. SMITH, et al., | * | |
| | * | |
| Respondents. | | |

***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Petitioner Davon Tate's Petition for Writ of Habeas Corpus. (ECF Nos. 1, 6). The matter is ripe for review, and no hearing is necessary. See R. Govern. § 2254 Cases U.S. Dist. Ct. 8(a); 28 U.S.C. § 2254(e)(2); Local Rule 105.6 (D.Md. 2023); see also Fisher v. Lee, 215 F.3d 438, 455 (4th Cir. 2000) (noting that petitioners are not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons set forth below, the Petition will be dismissed, and a certificate of appealability will not be issued.

## I.   BACKGROUND

On May 30, 2018, Tate was indicted in the Circuit Court for Baltimore County on eight counts related to a home invasion robbery. (State R. at 4, ECF No. 8-1). Tate pled guilty[1] to one count of armed robbery (ECF No. 8-2) and was sentenced on July 10, 2019, to twenty years' imprisonment, with all but ten years suspended, and two years' probation.

---

[1] Tate entered a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970), where he plead guilty but maintained his innocence.

(Plea Hr'g Tr. at 15:18–16:1, ECF No. 8-3). The prosecutor described the factual basis for the plea as follows:

> On April the 23rd, 2018 at 1:30, P.M., Ms. Tabon was inside of her apartment that she shared with Mr. Christopher Richardson on Ridgeberry Court in Woodlawn. Mr. Richardson picked up a backpack and exited the apartment. Moments after [], Davon Tate, and the co-defendant, Raymont McCullough, entered the apartment. [Tate] and the co-defendant demanded to know where Mr. Richardson was while the co-defendant, Raymont McCullough, produced and pointed what Ms. Tabon believed to be a black semi-automatic handgun at her. When Mr. Tate and Mr. McCullough could not locate Christopher Richardson, [Tate] took Ms. Tabon's cell phone and fled the location in a gold vehicle with heavily tinted windows. Ms. Tabon was able to describe [Tate] as skinny, as a black male in approximately his thirties with a teardrop tattoo on his face.
>
> Mr. Richardson was located approximately forty minutes later and advised that he had received a phone call from what he said was an unknown subject from the number of 443-943-4751. Mr. Richardson indicated that he agreed to loan this unknown individual $500.00.
>
> He said that he picked up his backpack, he exited the apartment that he shared with Ms. Tabon to provide the $500.00 to the unknown person, and then as he was coming through the stairway observed [], Davon Tate, and Raymont McCullough holding a handgun and in response Mr. Richardson fled. He, in fact, fled out of the shoes that he was wearing. Those shoes were located and photographed by officers near the location in the parking lot.
>
> Ms. Tabon contacted 911 from the safety of a neighbor's apartment building and Baltimore County Police immediately responded. Baltimore County detectives from the Investigative Services Team were assigned to investigate the case and in response Detective Temple obtained a court order for the last number that contacted Mr. Richardson. That number being 443-943-4751. The detective obtained the subscriber

information from the cell phone provider and the subscriber information was listed as Davon Tavon [sic].

Realtime cell info was used to track [Tate] to 3329 Brighten Street in Baltimore City and then to Loretta Avenue on May the 2nd, 2018. Detectives from the Investigative Services Team along with officers from the Baltimore City Police Department observed [Tate] seated with two others. They were immediately able to determine that this suspect matched the description of the person who robbed Ms. Tabon on April the 23rd, specifically that he was a skinny black male with a teardrop tattoo on his face.

[Tate] was detained at that time and placed under arrest. Search incident to arrest he had a phone in his pocket. Detective Temple called the phone number of 443-943-4751 and the cell phone that was removed from [Tate's] property began ringing.

[Tate] was transported to the Investigative Services Team office at the precinct where he was advised of his rights per Miranda. He indicated that he understood those rights, that he wished to waive those rise and he voluntarily made a statement.

During the informational section before they provided Miranda, [Tate] provided the 443-943-4751 as his telephone number. He eventually indicated that he and his homeboy Raymont, who detectives know to be Raymont McCullough, called Mr. Richardson regarding a half a pound of weed and that Mr. McCullough made the phone call from Mr. Tate's phone. He indicated that they travelled to and from the location in a gold Buick. He indicated that Richardson ran away and they were not able to purchase the marijuana. He admitted to going into Ms. Tabon's apartment and he even said that he and Raymont McCullough were in the bottom stairway waiting to grab Richardson and Richardson fled.

Your Honor, a review of [Tate's] cell phone records revealed that he did he have contact with Ms. Richardson's cell phone at the time of the home invasion just prior to it and detectives were ultimately -- strike that, Your Honor. [Tate] made contact with Raymont McCullough's number prior to the home invasion incident. Detectives were able to initiate realtime cell phone tracking of Raymont McCullough's phone number and

3

> they were able to arrest Raymont McCullough. A search and seizure warrant was executed on the address associated with the co-defendant Raymont McCullough where detectives were able to recover a black Powerline B.B. on shelf in the bedroom. That B.B. gun does match the description of the black semi-automatic handgun and it was a very realistic looking item.
>
> Your Honor, if called to testify, the State's witnesses would identify [Tate] who is seated in court today. All the events did occur in Baltimore County.

(Id. at 16:3–19:23).

Tate filed a petition for postconviction relief one day after he was sentenced. (State R. at 12–21). He asserted a single claim that his counsel was ineffective for failing to file a pretrial motion to suppress Teisha Tabon's statement to the police after the robbery. (Id.). Tate argued that his counsel should have taken the position that Tabon was under duress at the time she gave her statement because the officers on the scene observed that she was in a "panic-stricken state." (Id. at 18). The Circuit Court denied Tate's petition from the bench on June 9, 2021. (Postconviction Hr'g Tr. at 21:1–3, ECF No. 8-4).

Tate filed the instant Petition on December 2, 2021. (ECF No. 1). Respondents filed an Answer on February 25, 2022. (ECF No. 8).

## II.   DISCUSSION

Tate asserts a single claim for relief in his Petition—that his counsel was ineffective for failing to file a motion to suppress Tiesha Tabon's statement based on duress. (Pet. Writ. Habeas Corpus ["Pet."] at 11, ECF No. 1). Respondents argue that Tate's Petition should be dismissed because he cannot meet the standard for relief under 28 U.S.C. § 2254. (Answer at 23–31, ECF No. 8).

4

A.      **Standard for Relief Under 28 U.S.C. § 2254**

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute sets forth a "highly deferential standard for evaluating state-court rulings." Lindh v. Murphy, 521 U.S. 320, 333 n.7 (1997); Bell v. Cone, 543 U.S. 447, 455 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions "the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted); see also White v. Woodall, 572 U.S. 415, 419–20 (2014) (finding that a state prisoner must show that the state court ruling on the claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement" (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011))).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

5

result opposite to [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000) (citation omitted).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." Id. (quoting Williams, 529 U.S. at 410).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010) (citing Rice v. Collins, 546 U.S. 333, 341–42 (2006)). Thus, "even if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. Id. (internal quotation marks and citation omitted). Similarly, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams, 529 U.S. at 411).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with

some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." Id. (quoting Wilson v. Ozmint, 352 F.3d 847, 858 (4th Cir. 2003)).

**B.     Ineffective Assistance of Counsel**

The Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984); Buck v. Davis, 137 S.Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in Strickland, 466 U.S. at 687–88. See Williams v. Taylor, 529 U.S. 362, 390 (2000). That test requires the petitioner to show that (a) his counsel's performance was deficient, and (b) he was prejudiced by the deficient performance. Strickland, 466 U.S. at 687; Buck, 137 S.Ct. at 775.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Harrington v. Richter, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 88 (quoting Strickland, 466 U.S. at 690). The "first prong sets a high bar." Buck, 137 S.Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent

7

assistance.'" Id. (quoting Strickland, 466 U.S. at 690). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." Id. at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Buck, 137 S.Ct. at 776. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. Strickland, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. Id. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." Berghuis v. Thompkins, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in Strickland, a court "need not determine whether counsel's performance was deficient

8

before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. Nor must a court address both components if one is dispositive. Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015), citing Strickland, 466 U.S. at 697. Because either prong is fatal to a petitioner's claim, "there is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

To establish prejudice in a matter involving a guilty plea, Strickland's second prong requires a showing that "there is a reasonable probability that, but for counsel's errors, [a petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S 52, 59 (1985). A federal habeas court must conduct "an objective inquiry [which is] dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (internal citations omitted) (citing Hill, 474 U.S. at 59–60). This inquiry involves an examination of the facts and circumstances surrounding the plea, the maximum sentence exposure, as well as the likelihood of success at trial. Id. at 369–70; see United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (noting that a court must be convinced that "proceeding to trial would have been objectively reasonable in light of all the facts").

**C.    Claim for Relief**

In his sole claim for relief, Tate contends that his counsel should have filed a motion to suppress Tiesha Tabon's statement to the police. (Pet. at 11–16). The police report, attached to Tate's postconviction petition, describes Tabon as being in a "panic-stricken state" immediately after the armed robbery. (State R. at 23). The report also includes

9

Tabon's description of the two assailants. She described "Suspect #2," as "B/M 20-23 5'10, 160 thin build with a tear drop style tattoo under his right eye." (Id.).

The Circuit Court denied Tate's postconviction petition, which asserted the same argument for relief. (Postconviction Hr'g Tr. at 15:18–16:1). The Circuit Court concluded: (1) there were, in fact, two motions to suppress filed by Tate's counsel, (id. at 8:16–9:8); (2) the plea colloquy established that Tate understood he was waiving any right to challenge the evidence against him, he was waiving his right to a jury trial and to cross-examine witnesses, and that he understood the nature of the charges against him, the sentence, and the plea, (id. at 9:13–11:24); (3) the motion to suppress would not have been successful because Tabon's statement was not made under duress or coercion but was an "excited utterance" of a person who had just been a victim of an armed robbery, (id. at 13:9–17); and (4) Tate would have been convicted even if the statement had been suppressed because Tabon was willing to testify at trial, and the prosecution had other inculpatory evidence including cell phone data and Tate's statement to police, (id. at 13:19–21:9).

Tate's claim for relief fails because he cannot demonstrate that the Circuit Court's conclusion was objectively unreasonable. First, the record establishes that both attorneys that were engaged on Tate's behalf filed omnibus motions to suppress. (State R. at 9–11). Assuming Tate's claim extends to an argument that his counsel should have filed a motion to suppress that specifically addressed Tabon's statement, that claim fails too because, as explained by the Circuit Court, the motion would not have succeeded. The Circuit Court concluded that the description in the police report of Tabon as "panic-stricken" was a

remark on her heightened emotional state in the aftermath of the armed robbery. (Post Conviction Hr'g Tr. at 13:9–17). Absent clear and convincing evidence to the contrary, the Circuit Court's determination of the facts is presumed correct. See 28 U.S.C. § 2254(e)(1). Tate has not provided the Court with any authority suggesting that a victim's emotional reaction to the crime is grounds for suppressing the description of the assailant.

Tate also fails to show that he would have rejected the plea and proceeded to trial if the motion to suppress somehow would have been successful. Tate was charged with eight counts associated with the armed robbery. The record is silent on what maximum sentence Tate could have faced if found guilty as charged, but there is little doubt that he received a substantial benefit by pleading guilty to one count of armed robbery with an agreed-to sentence with active incarceration of ten years. There is also little doubt that the evidence against Tate was strong without Tabon's initial statement to police. Law enforcement located Tate by tracking the cell number from the call that lured Christopher Richardson outside of the home before he encountered an armed man. (State R. at 24). After tracking the phone's location, officers arrested Tate when they made a call to the cell phone number they were tracking and the phone in Tate's possession rang. (Id. at 24). Moreover, Tate confessed to taking part in the robbery during his recorded interview with the police. (Id.). Tabon was able to identify Tate when she was shown a photo by law enforcement. (Id. at 26). Ostensibly, Tabon would have been able to readily provide an in-court identification during a trial.

In sum, Tate has not demonstrated that it would have been objectively reasonable, in light of all of the facts, for him to have rejected the plea and proceeded to trial, even if a

separate or specific motion to suppress Tabon's statement had been filed. The Circuit Court's dismissal of Tate's ineffective assistance of counsel claim was not an unreasonable application of Strickland, and his claim lacks merit.

## C. Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." Id. at 338. Tate has failed to satisfy this standard on his claim. Therefore, a certificate of appealability shall not issue.

## III.   CONCLUSION

For the foregoing reasons, Tate's Petition for Writ of Habeas Corpus will be dismissed. A certificate of appealability will be denied. A separate Order follows. So ordered this 7th day of May, 2024.

  _____/s/_____
  George L. Russell, III
  United States District Judge